## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

| | |
|---|---|
| JASON ALTENHOFEN, Individually and For Others Similarly Situated,<br>　　　　　Plaintiff,<br><br>v.<br><br>SOUTHERN STAR CENTRAL GAS PIPELINE, INC.,<br>　　　　　Defendant. | Case No. 4:20-CV-30-JHM<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COMPLAINT

### SUMMARY

1.	Plaintiff Jason Altenhofen ("Altenhofen") brings this lawsuit to recover unpaid overtime wages and other damages from Southern Star Central Gas Pipeline, Inc. ("Southern Star") under the Fair Labor Standards Act ("FLSA").

2.	Altenhofen worked for Southern Star as an Inspector.

3.	Altenhofen and the Day Rate Inspectors (as defined below) regularly worked for Southern Star in excess of forty (40) hours each week.

4.	But Southern Star did not pay them overtime.

5.	Instead of paying overtime as required by the FLSA, Southern Star improperly paid Altenhofen and the Day Rate Inspectors a daily rate with no overtime compensation.

6.	This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

7.	This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Southern Star is headquartered in this District.

## THE PARTIES

9. Altenhofen worked for Southern Star from June 2018 until October 2018 as an Inspector.

10. Throughout his employment, Southern Star paid Altenhofen a flat daily rate for each day worked regardless of the total hours worked in a workweek ("day rate pay plan").

11. Altenhofen's consent to be a party plaintiff is attached as Exhibit A.

12. Altenhofen brings this action on behalf of himself and all other similarly situated workers who were paid by Southern Star's day-rate system. Southern Star paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in violation of the FLSA.

13. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All inspectors Southern Star Central Gas Pipeline, Inc. paid according to its day rate pay plan in the past three (3) years (the "Day Rate Inspectors").**

14. The identities of the Day Rate Inspectors can be readily ascertained from Southern Star's records.

15. Southern Star Pipeline LLC is a Delaware limited liability company and may be served with process by serving its registered agent: CT Corporation System, 306 W. Main St., Suite 512, Frankfort, KY 40601.

## COVERAGE UNDER THE FLSA

16. At all times hereinafter mentioned, Southern Star was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

17. At all times hereinafter mentioned, Southern Star was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

18. At all relevant times, Southern Star has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

19. At all relevant times, Southern Star has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

20. In each of the past 3 years, Southern Star's annual gross volume of sales has well exceeded $1,000,000 for at least the past 3 years.

21. At all relevant times, Altenhofen and the Day Rate Inspectors were engaged in commerce or in the production of goods for commerce.

22. Southern Star uniformly applied its policy of paying its Inspectors, including Altenhofen, a day rate with no overtime compensation.

23. Southern Star applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

24. By paying its Inspectors a day rate with no overtime compensation, Southern Star violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

25. As a result of this policy, Southern Star and the Day Rate Inspectors do not receive overtime as required by the FLSA.

26. Southern Star's uniform compensation scheme of paying its Inspectors a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

27. Southern Star is a company engaged in natural gas pipeline transport. As the owner and operator of drilling operations for natural gas pipelines, it hires personnel (like Altenhofen) to perform inspection work.

28. Many of these individuals worked for Southern Star on a day rate basis (without overtime pay).

29. These workers make up the proposed collective of Day Rate Inspectors.

30. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

31. Throughout his employment with Southern Star, Southern Star paid him on a day rate basis.

32. Altenhofen and the Day Rate Inspectors work for Southern Star under its day rate pay scheme.

33. Altenhofen and the Day Rate Inspectors do not receive a salary.

34. If Altenhofen and the Day Rate Inspectors did not work, they did not get paid.

35. Altenhofen and the Day Rate Inspectors receive a day rate.

36. Altenhofen and the Day Rate Inspectors do not receive overtime pay.

37. This is despite the fact Altenhofen and the Day Rate Inspectors often worker 10 or more hours a day, for 7 days a week, for weeks at a time.

38. For example, Altenhofen received a day rate for each day he worked for Southern Star.

39. Although he typically worked 7 days a week, for 10 or more hours a day, he did not receive any overtime pay.

40. Altenhofen and the Day Rate Inspectors received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

41. Altenhofen and the Day Rate Inspectors are not employed on a salary basis.

42. Altenhofen and the Day Rate Inspectors do not, and never have, received guaranteed weekly compensation from Southern Star irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

43. Altenhofen and the Day Rate Inspectors work in accordance with the schedule set by Southern Star and/or its clients.

44. Altenhofen's work schedule is typical of the Day Rate Inspectors.

45. Southern Star controls Altenhofen and the Day Rate Inspectors' pay.

46. Likewise, Southern Star and/or its clients control Altenhofen and the Day Rate Inspectors' work.

47. Southern Star requires Altenhofen and the Day Rate Inspectors to follow Southern Star and/or its clients' policies and procedures.

48. Altenhofen and the Day Rate Inspectors' work must adhere to the quality standards put in place by Southern Star and/or its clients.

49. Altenhofen and the Day Rate Inspectors are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

50. As an Inspector, Altenhofen was responsible for ensuring Southern Star's and/or its clients' projects were completed according to established guidelines, specifications, and restrictions.

51. All Southern Star's Day Rate Inspectors perform similar duties, inspecting projects, ensuring work is done according to established guidelines, specifications, and restrictions.

52. Altenhofen and the Day Rate Inspectors provide inspection reports to Southern Star (and/or its clients') personnel.

53. At all relevant times, Southern Star and/or its clients maintained control over Altenhofen and the Day Rate Inspectors via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

54. Altenhofen and the Day Rate Inspectors do not have the power to hire or fire any employees.

55. Altenhofen's working relationship with Southern Star is similar Southern Star's relationship with its other Day Rate Inspectors.

56. Southern Star knew Altenhofen and the Day Rate Inspectors worked more than 40 hours in a week.

57. Southern Star knew, or showed reckless disregard for whether the Day Rate Inspectors were entitled to overtime under the FLSA.

58. Nonetheless, Southern Star failed to pay Altenhofen and the Day Rate Inspectors overtime.

59. Southern Star willfully violated the FLSA.

## CAUSES OF ACTION
## FLSA VIOLATIONS

60. By failing to pay Altenhofen and those similarly situated to him overtime at one-and-one-half times their regular rates, Southern Star violated the FLSA's overtime provisions.

61. Southern Star owes Altenhofen and those similarly situated to him the difference between the rate actually paid and the proper overtime rate.

6

62. Because Southern Star knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Southern Star owes these wages for at least the past three years.

63. Southern Star is liable to Altenhofen and those similarly situated to him for an amount equal to all unpaid overtime wages as liquidated damages.

64. Altenhofen and those similarly situated to him are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### COLLECTIVE ACTION ALLEGATIONS

65. Altenhofen incorporates all previous paragraphs and alleges that the illegal pay practices Southern Star imposed on Altenhofen were likewise imposed on the Putative Class Members.

66. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

67. Numerous other individuals who worked with Altenhofen indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

68. Based on his experiences and tenure with Southern Star, Altenhofen is aware that Southern Star's illegal practices were imposed on the Day Rate Inspectors.

69. The Day Rate Inspectors were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

70. Southern Star's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Inspectors.

71. Altenhofen's experiences are therefore typical of the experiences of the Day Rate Inspectors.

72. The specific job titles or precise job locations of the Day Rate Inspectors do not prevent class or collective treatment.

73. Altenhofen has no interests contrary to, or in conflict with, the Day Rate Inspectors. Like each Day Rate Inspector, Altenhofen has an interest in obtaining the unpaid overtime wages owed to him under federal law.

74. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

75. Absent this action, many Day Rate Inspectors likely will not obtain redress of their injuries and Southern Star will reap the unjust benefits of violating the FLSA and applicable state labor laws.

76. Furthermore, even if some of the Day Rate Inspectors could afford individual litigation against Southern Star, it would be unduly burdensome to the judicial system.

77. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

78. The questions of law and fact common to the Day Rate Inspectors predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether the Day Rate Inspectors' rights were violated as a result of Southern Star's day rate pay plan;

    b. Whether Southern Star's day rate pay plan was made in good faith;

    c. Whether Southern Star's decision to not pay time and a half for overtime to the Day Rate Inspectors was made in good faith;

    d. Whether Southern Star's violation of the FLSA was willful; and

  e. Whether Southern Star's illegal pay practices were applied uniformly across the nation to all Day Rate Inspectors.

79. Altenhofen's claims are typical of the claims of the Day Rate Inspectors. Altenhofen and the Day Rate Inspectors sustained damages arising out of Southern Star's illegal and uniform employment policy.

80. Altenhofen knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

81. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

## JURY DEMAND

82. Altenhofen demands a trial by jury

## PRAYER

83. WHEREFORE, Altenhofen prays for judgment against Southern Star as follows:

  a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

  b. For an Order pursuant to Section 16(b) of the FLSA finding Southern Star liable for unpaid back wages due to Altenhofen and the FLSA Class Members for liquidated damages equal in amount to their unpaid compensation;

  c. For an Order awarding Altenhofen and the Day Rate Inspectors their reasonable attorneys' fees and expenses as provided by the FLSA;

    d.    For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

    e.    For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: *s/ Charles E. Moore*
    **Moore & Moorman**
    **401 Frederica St.**
    **Suite A202**
    **P.O. Box 549**
    **Owensboro, Ky 42302**

    **AND**

    **Michael A. Josephson**
    Texas Bar No. 24014780
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**