UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

JASON ALTENHOFEN, individually and
on behalf of all others similarly situated,

               *Plaintiff*,

         v.

SOUTHERN STAR CENTRAL GAS
PIPELINE, INC.,

               *Defendant*.

Civil Action No. 4:20-cv-00030-JHM-HBB

Judge Joseph H. McKinley, Jr.

Magistrate Judge H. Brent Brennenstuhl

<u>Electronically filed</u>

## <u>CLEVELAND INTEGRITY SERVICES, INC.'S  MOTION TO INTERVENE</u>

## I.    INTRODUCTION

Jason Altenhofen ("Altenhofen") brings suit under the Fair Labor Standards Act ("FLSA") contending that Southern Star Central Gas Pipeline Company ("Southern Star") failed to pay him overtime.  Altenhofen, however, was employed by and paid by Cleveland Integrity Services, Inc. ("CIS"), which assigned him to work for its customer, Southern Star.  Yet, Altenhofen's lawsuit pointedly excludes his actual employer from his purely employment claim.[1]

Altenhofen's omission in this case needs to be rectified.  As Altenhofen's employer, CIS determined the central issues in this case: his pay and his duties.  Plus, Altenhofen executed an arbitration agreement as a condition of his employment *with CIS,* which he now attempts to evade through selective pleading.

---

[1]  This is Altenhofen's third FLSA action against one of CIS' customers, claiming the customer is the employer while neglecting to mention that CIS hired him, set his salary, determined he was qualified as exempt from the FLSA's overtime requirement, and paid the salary that he takes issue with. *See*, *Altenhofen v. Energy Transfer Partners, L.P.*, No. 2:20-cv-00200-CB (W.D. Pa. Feb. 6, 2020); *Altenhofen v. Southern California Gas Co.*, No. 2:20-cv-01723-JFW-JPR (C.D. Cal. Feb. 24, 2020).

CIS, accordingly, moves to intervene pursuant to Federal Rule of Civil Procedure 24.

## II.   FACTUAL CONTEXT

### A.   CIS's Relationship with Southern Star

CIS employs inspection personnel to provide third-party inspection services to its customers. (*See* 4.7.20 Frye Declaration at ¶ 3, attached as Exhibit 1).  This is comparable to a CPA firm sending auditors to its clients.  In both instances, there is a compelling logic for having truly independent inspections done.

Pipeline inspectors, like auditors, are hired to work independently, just like auditors:

> The Inspector acts as the Owner Company's authorized representative for non-financial matters, continuously observes the Contractor's progress and monitors all activities in their assigned areas in accordance with codes and standards; regulatory requirements; Owner Company safety and environmental requirements, drawings, plans, and specifications; as well as the terms of the construction contract or agreement. The Inspector may also be asked to assist other specialized Inspectors (e.g., Welding Inspector), as directed.

CEPA Foundation and the INGAA Foundation, A Practical Guide for Pipeline Instruction Inspectors 11 (Mar. 2016), https://www.cepa.com/wp-content/uploads/2016/11/A-Practical-Guide-for-Pipeline-Construction-Inspectors-16Mar2016-FIN...1.pdf.  And, because this work requires specialized personnel for only the duration of the project, these assignments are for a finite period.  This another reason that CIS customers outsource pipeline inspection work.

Southern Star is one of CIS's customers. (*See* 4.7.20 Frye Declaration at ¶ 4).  Relevantly, Southern Star engaged CIS to provide third-party inspection services for its Welda Station project in Welda, Kansas. (*See* 4.7.20 Frye Declaration at ¶¶ 4, 10).  Southern Star pays CIS a stipulated rate to compensate for the services CIS provides.  This rate was all-inclusive, meant to cover overhead, profit, equipment, material, salary, benefits, vehicle allowance and applicable taxes and

2

withholdings under state and federal law.  CIS then pays its inspectors in a manner that it alone determines. (*See* 4.7.20 Frye Declaration at ¶ 6).

### B.    CIS's Employment of Altenhofen

CIS employed Altenhofen and assigned him to provide inspection services to various CIS clients. (*See* 4.7.20 Frye Declaration at ¶ 8).  On June 5, 2018, CIS assigned Altenhofen as a Chief Inspector to its team providing services to Southern Star at Welda Station. (*See* 4.7.20 Frye Declaration at ¶ 9).  Altenhofen worked exclusively in Kansas during this assignment. (*See* 4.7.20 Frye Declaration at ¶ 10).

CIS determined that Altenhofen's pay and duties qualified him as overtime exempt under the FLSA. (*See* 4.7.20 Frye Declaration at ¶ 17).  CIS paid Altenhofen a "minimum weekly salary equal to four times the daily salary amount" based on FLSA regulations. (4.7.20 Frye Declaration at ¶ 12); *see* 29 C.F.R. § 541.604(b) (explaining that a day rate satisfies the salary basis test so long as it is combined with a weekly guarantee).  CIS also classified Altenhofen as exempt from the FLSA because his duties and pay qualified as both an administrative exempt and executive exempt job. (*See* 4.7.20 Frye Declaration at ¶ 17); *see also* 29 U.S.C. § 213.

While employed at CIS, Altenhofen signed ten separate documents that identified him as an employee of CIS. (*See* 4.7.20 Frye Declaration, Ex. A-B, E-K, M).  These documents included acknowledgments that Altenhofen would comply with CIS's policies governing employee conduct:

- 4.7.20 Frye Declaration, Ex. E (Altenhofen's Acknowledgement of CIS's Safety Handbook);
- 4.7.20 Frye Declaration, Ex. F (Altenhofen's Acknowledgement of CIS's Drug and Alcohol Policy);
- 4.7.20 Frye Declaration, Ex. H (Altenhofen's Acknowledgement of CIS's Incident and Injury Reporting Policy);
- 4.7.20 Frye Declaration, Ex. I (Altenhofen's Acknowledgement of CIS's Employee Driving Policy);

- 4.7.20 Frye Declaration, Ex. J (Altenhofen's Acknowledgement of CIS's Workers' Compensation Notice).

Altenhofen executed an arbitration agreement as a condition of his employment. (*See* 4.7.20 Frye Declaration at ¶ 7).  Under that arbitration agreement, Altenhofen committed to

arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company regardless of whether those are claims under common law or statutory law.

(4.7.20 Frye Declaration, Ex. A at ¶ 2).  The Agreement also included a provision waiving Altenhofen's right to pursue any "class actions, collective actions, or multiple-employee claims of any kind." (4.7.20 Frye Declaration, Ex. A at ¶ 2).  Finally, the Agreement provides that "[a]rbitration shall be conducted in accordance with the American Arbitration Association Employment Arbitration Rules ("AAA Rules")."  (4.7.20 Frye Declaration, Ex. A at ¶ 4).

CIS assigned Altenhofen to provide services on its behalf to Southern Star in Kansas from July 5, 2018 until October 20, 2018.  For his work in those three plus months, CIS paid Altenhofen $22,100.00 in gross salary.  Altenhofen earned an additional $39,159.82 from CIS in 2018 for work done while assigned to a different CIS customer.  (*See* 4.7.20 Frye Declaration at ¶ 16).

During the time that Altenhofen worked at Southern Star's Welda Station project in Welda, Kansas, Altenhofen was undeniably employed by CIS.

## III.   ARGUMENT

Altenhofen's lawsuit alleges that he was denied overtime pay in violation of the FLSA.  But, rather than suing CIS – the entity that hired him, that determined he was overtime exempt, and that paid him – Altenhofen sues *only* the customer to which he was assigned but that neither paid him nor determine how much he was paid: Southern Star.

Even though Altenhofen leaves CIS unnamed in his Complaint, his allegations against Southern Star are unavoidably directed against CIS.  For example, his Complaint alleges that

4

"[t]hroughout his employment with Southern Star, Southern Star paid him on a day rate basis," *Complaint*, at ¶ 31. Yet, CIS alone determined and paid his salary. (*See* 4.7.20 Frye Declaration at ¶ ¶ 12-16).

Southern Star did not hire Altenhofen, did not classify him as overtime exempt, did not establish his compensation package, did not offer him benefits, did not make requisite payroll contributions to state and federal taxing authorities, and did not write or control his pay paychecks. The reality of Altenhofen's Complaint is that he asserts that Southern Star might be a joint employer *with CIS*. That is his only route to holding Southern Star liable for the alleged violations of the FLSA.

Altenhofen may wish to allege that Southern Star was his joint employer but that cannot and does not alter CIS's undeniable interest as his primary employer in intervening in this case to defend against Altenhofen's claim challenging CIS's decision to classify him as overtime exempt. Further, Altenhofen's tactic of suing only Southern Star is simply an attempt to avoid his arbitration agreements; permitting this lawsuit to go forward without CIS's participation would deprive CIS of these interests.[2]

To protect its interests, CIS moves to intervene pursuant to both Federal Rule of Procedure 24(a)(2) and Federal Rule of Civil Procedure 24(b)(1)(B).

## A.     Rule 24(a)(2): Intervention As Of Right

Rule 24 allow the intervention as of right of anyone who timely "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may **as a practical matter** impair or impede the movant's ability to protect its interest,

---

[2] Pursuant to Federal Rule of Civil Procedure 24(c), CIS attaches as Exhibit 5 its motion to compel arbitration, seeking to enforce its bargain with Altenhofen. *See, e.g., U.S. ex rel. Frank M Sheesley Co. v. St. Paul Fire and Marine Ins. Co.*, 239 F.R.D. 404, 414 (W.D. Pa. 2006) (motion to compel arbitration satisfies Rule 24(c)). CIS will file this motion immediately upon the Court's approval of its intervention.

unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2) (emphasis added).  As a practical matter, CIS -- Altenhofen's actual employer -- has such an interest.

*Robertson v. Enbridge (U.S.) Inc.*, No. 2:19-cv-01080-WSS-LPL, Dkt. 98 (W.D. Pa. Apr. 13, 2020) (attached as Exhibit 3) is illustrative.  There, plaintiff's attorneys took the same tactic: bringing an FLSA lawsuit against a customer of CIS.  The magistrate judge there rightly concluded that CIS had a sufficient interest in the litigation because

> They hired the subject employees, they determined how much to pay theme, and they determined that they were exempt from overtime pay.  They provided the employees to the named Defendant.  The potential Intervenors appear at this stage to fit at least three out of the four relevant factors of being qualified as joint employers with Enbridge under the Third Circuit's definition.  Regardless of the indemnity issue, which the Court finds does not have to be proven at this time, they have stated a sufficient interest in the litigation.  In addition, these potential employees, and others who may opt in later, have either agreed to a forum selection clause or an arbitration agreement, both of which are being circumvented given that a joint employer of theirs was not named.

*Id*. at 6.

Similarly, in *Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, Dkt. 30 (D. Wyo. Mar. 3, 2020) (attached as Exhibit 4), the court granted intervention to another pipeline inspection services company in an FLSA lawsuit against its customer.  The logic for that ruling also applies here: "[t]he Court finds the potential for Silver Creek [customer] to claim Applied [employer / inspection services company] is Plaintiff's sole employer, or even a joint employer, establishes a protectable interest." *Id*. at 6.

The Sixth Circuit has distilled Rule 24(a)(2) into four parts, explaining that a proposed intervenor must establish "(1) that the motion to intervene was timely, (2) that they have a substantial legal interest in the subject matter of the case; (3) that their ability to protect that interest will be impaired in absence of intervention; and (4) that the parties already before the court may not adequately represent that interest." *Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999).

6

The requirements of Rule 24 are "broadly construed in favor of potential intervenors." *Purnell v. City of Akron*, 925 F.2d 941, 951 (6th Cir. 1991).  Here, CIS meets all four requirements.

**First**, CIS's motion, filed before the start of discovery, is timely; intervention at this early stage of the litigation does not unduly delay or prejudice Altenhofen's or Southern Star's rights. *See, e.g.*, *Fund for Animals v. Patton*, No. 3:98-CV-365-S, 1998 WL 34202233, at *1 (W.D. Ky. Sept. 25, 1998 (intervention timely where filed the case "was in its initial stage").

**Second**, CIS has a substantial legal interest in this case on multiple levels that more than satisfy the Sixth Circuit's "rather expansive notion of the interest sufficient to invoke intervention as of right." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).

**i.** The central issue in this case is whether Altenhofen's pay and duties qualified him for an overtime exemption.  CIS has an interest in the adjudication of this issue because it set his job as overtime exempt and exclusively controlled his pay.  Put differently, CIS's "conduct is part and parcel of the alleged wrongdoing alleged by Plaintiff." *Bagne v. JP Morgan Chase Bank, N.A.*, No. 08-cv-13646, 2008 WL 11355527, at *4 (E.D. Mich. Dec. 31, 2008) (granting intervention as of right where the plaintiff alleged that J.P. Morgan Chase Bank unlawfully purchased securities on her behalf through the proposed-intervenor, J.P. Morgan Securities, Inc.).

Further, any liability resulting is joint and several among joint employers. *See* 29 C.F.R. § 791.2(a) ("[A]ll joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions, with respect to the entire employment for the particular workweek.").  The potential that CIS, Altenhofen's employer, may be jointly liable with Southern Star (if Altenhofen is able to show Southern Star also employed him) is a legally sufficient interest for intervention. *Kansas Public Emp. Retirement*

7

*Sys. v. Reimer & Kroger Assoc., Inc.*, 60 F.3d 1304 (8th Cir. 2004) (granting intervention; the potential of joint and several liability was sufficient to allow intervention).

      **ii**.      CIS not only has an interest in vindicating its proper classification of Altenhofen as overtime exempt but also has a distinct interest in enforcing Altenhofen's arbitration agreement. *Bagne,* 2016 WL 5422063 at *4 (determining that intervention as of right was necessary where denial of intervention "could potentially result in the resolution of the instant action in court, instead of the contracted arbitral forum").  Moving forward without CIS could result in Altenhofen being able to avoid the arbitration forum in which he committed to bring his individual employment claims.  This would deprive CIS of the benefit of the bargain it struck with Altenhofen: in exchange for employing him and paying him significant compensation, CIS assured itself of "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).

      **iii**.      CIS has a further interest because Southern Star has demanded indemnification for Altenhofen's claims. (*See* 4.20.20 Frye Declaration at ¶ 3, attached as Exhibit 2).  An intervenor has a sufficient interest where it may be required to indemnify its customer. *See, e.g., Estate of Sieman ex rel. Sieman v. Huron Med. Ctr.*, No. 11-11249-BC, 2012 WL 909820, at *4 (E.D. Mich. Mar. 16, 2012) (granting intervention as of right where, if the defendant were to be found liable, the defendant "may seek indemnification" from the proposed-intervenor for the judgement); *Vasandani v. Dublin Green Condominium Owners' Ass'n, Inc.*, No. 2:14-cv-0059, 2014 WL 2695499, at *2 (S.D. Ohio June 13, 2014) (determining that the proposed-intervenor was entitled to intervention as of right where it "could be liable to indemnify Defendants" "if [the plaintiff]

prevails in her claims" and "could be estopped from re-litigating facts decided in this case" in another action).

**Third**, disposing of this action without CIS would impair those interests. Most pointedly, CIS's ability to defend against Altenhofen's claims that his compensation ran afoul of the FLSA would be limited **as a practical matter**. If CIS – the entity that set and paid Altenhofen's salary; determined that he was eligible for exempt status; and maintains the employment records on which his case is predicated – is excluded, it would be deprived of the "opportunity to raise arguments and defenses before adjudication of its own liability to Plaintiff." *Clean Earth, Inc. v. Endurance Am. Ins.*, Civil Action No. 15-6111 (FLW), 2016 WL 5422063, at *4-5 (D.N.J. Sept. 28, 2016) (allowing a general contractor to intervene in a lawsuit brought by a sub-contractor against the general contractor's insurer and determining, with respect to impairment of interest, that the possibility that the intervenor could be held liable without having an opportunity to legally dispute that liability impaired the intervenor's interest, which could not be cured "simply because [the general contractor] has an opportunity to defend against an indemnification claim by [the insurer]").

**Fourth**, CIS's interest is not adequately represented by the existing parties. Southern Star lacks the records and witnesses to defend an employment claim from an individual that it never employed. Southern Star did not hire Altenhofen, assign him to the position of Chief Inspector, classify Altenhofen as exempt, nor write his paychecks. CIS's "superior understanding" of its decision to classify Alternhofen as overtime-exempt and "greater access to relevant documents and individuals may result in" its "interests being inadequately represented" if it is not allowed to intervene. *Advanced Dynamic Interfaces, LLC v. Aderas, Inc*., C.A. No. 12-cv-963 (GMS), 2013 WL 6989428, at *1 n.1 (D. Del. Jan. 11, 2013) (determining that a company could intervene as of

right in a patent suit brought against its customer because the company was the creator and manufacturer of the products at issue).

Moreover, CIS's interests diverge from those of Southern Star because Southern Star has demanded indemnity of CIS.  Thus, there is "the distinct possibility" that Southern Star and CIS "may point the proverbial finger at each other" at some point in the litigation (*Snow*, Dkt. 30, at 8) or may have an incentive to settle (rather than press a full defense of CIS's pay practices) and stick CIS with the bill. *See Morocco v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*., No. Civ.A. 2:03-CV-523, 2003 WL 22327825, at * (S.D. Ohio Oct. 9, 2003) ("Because it appears that any judgment against [the defendant] will ultimately be borne, from a financial standpoint, by [the proposed-intervenor], this Court concludes that [the defendant's] representation of [defendant's] interests may be inadequate").

### B.    Rule 24(b): Permissive Intervention

Even if there could be doubt about intervention as of right, CIS is entitled to intervene as a matter of permission on those same considerations.   Rule 24(b)(1)(B) allows permissive intervention to anyone who timely asserts "a claim or defense that shares with the main action a common question of law or fact."  Both are met here.

There are undeniably **common questions of law**: *e.g*., the enforcement of Altenhofen's arbitration commitment.  That common issue in and of itself warrants intervention. *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 27 (D.D.C. 2002) (granting permissive intervention in a trade secrets suit to the customer of both parties where the lawsuit questioned whether the customer conspired with the defendant to disclose trade secrets because, in part, the customer and the plaintiff had an arbitration agreement and both the customer and defendant argued that arbitration should be compelled); *Robertson*, Dkt. 98 at 10 (determining whether a court is the proper forum

for an FLSA claim given the arbitration clause that the alleged joint employer agreed to with the plaintiff is a common question of law).

There are also **common questions of fact**.  The central issue in this suit is whether Altenhofen's pay and duties qualify him as overtime exempt under the FLSA.  These questions cannot be resolved without addressing the actions of CIS, which paid his salary; set his title as Chief Inspector with the ensuing duties of that position; and determined that Altenhofen was overtime exemp under the FLSA.  CIS asserts a defense – that it properly classified Altenhofen as overtime exempt – that shares common facts with any argument Southern Star may make on the merits. *Robertson*, Dkt. 98 at 11 (deciding that "[a]ny determination that Enbridge [the sued customer of CIS] violated the law would be based on a joint employment relationship, which would implicate the potential Intervenors" such that there are common question of fact weighing in favor of permissive intervention).

Put differently, a full airing of the facts upon which liability depends is not possible without the participation of Altenhofen's actual employer. *Snow*, Dkt. 30, at 10 (determining that allowing the actual employer -- also an inspection services company -- in an FLSA suit brought against that company's customer "adds value and significantly advances the full and complete development of the factual and legal issues raised in the underlying action"); *see also Lexington Streetsboro, LLC v. Geis*, No. 5:07CV02450, 2008 WL 5723491 at *3 (N.D. Ohio Feb. 22, 2008) (granting intervention permissively where "the relationships between the various parties and claims in the case arise from the common nucleus of operative fact surrounding" the subject matter of the lawsuit).

IV.  **CONCLUSION**

For these reasons, CIS should be allowed to intervene in this case.

Respectfully submitted

*/s/ Oliver B. Rutherford*
Oliver B. Rutherford
Smith & Smith Attorneys
400 North, First Trust Centre
200 South Fifth Street
Louisville, KY 40202
(502) 587-0761 (phone)
(502) 589-5345 (fax)
obr@smithandsmithattorneys.com

Rachel B. Cowen, *pro hac vice forthcoming*
McDermott Will & Emery LLP
444 West Lake Street
Chicago, Illinois 60606
(312) 372-2000 (phone)
(312) 884-7700 (fax)
rcowen@mwe.com
*Counsel for Defendant Cleveland Integrity Services, Inc.*

## CERTIFICATE OF SERVICE

The undersigned does certify that on the 20th day of April 2020, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the applicable ECF registrants.

*/s/ Oliver B. Rutherford*
Oliver B. Rutherford
Smith & Smith Attorneys
400 North, First Trust Centre
200 South Fifth Street
Louisville, KY 40202
(502) 587-0761 (phone)
(502) 589-5345 (fax)
obr@smithandsmithattorneys.com