UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:20CV-00030-JHM

JASON ALTENHOFEN, individually and
on behalf of others similarly situated                                                          PLAINTIFF

V.

SOUTHERN STAR CENTRAL GAS PIPELINE, INC.                                  DEFENDANT

V.

CLEVELAND INTEGRITY SERVICES, INC.                        INTERVENOR-DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Intervenor-Defendant, Cleveland Integrity Services, Inc. ("CIS"), to disqualify the law firms of Josephson Dunlap LLC and Bruckner Burch PLLC (collectively "Plaintiff's counsel") as counsel in this matter, or in the alternative, to preclude counsel from unapproved communications with putative members of the collective class and/or from earning fees from any collective that may be established. [DN 51]. Fully briefed, this matter is ripe for decision.

### I. STANDARD OF REVIEW

"A motion to disqualify counsel is the proper method for a party to bring to the Court's attention an alleged conflict of interest by opposing counsel." *Institutional Labor Advisors, LLC v. Allied Res., Inc.*, No. 4:12CV-00044-JHM, 2012 WL 12996182, at *1 (W.D. Ky. Dec. 6, 2012) (citing *DeBiasi v. Charter County of Wayne*, 284 F. Supp. 2d 760, 770 (E.D. Mich. 2003)). The power to disqualify an attorney or a law firm from a case is "'incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Institutional Labor Advisors*, 2012 WL 12996182, at *1 (quoting *S.D. Warren Co. v. Duff–Norton*,

302 F. Supp. 2d 762, 766 (W.D. Mich. 2004)).  A party moving for the disqualification of opposing counsel bears the burden of proof to show that disqualification is necessary.  *Bartech Indus., Inc. v. Int'l Baking Co., Inc.*, 910 F. Supp. 388, 392 (E.D. Tenn. 1996) (citing *A.J. by L.B. v. Kierst*, 56 F.3d 849 (8th Cir. 1995)).  The Court has broad discretion when deciding whether counsel for a party before it should be disqualified.  *Institutional Labor Advisors*, 2012 WL 12996182, at *1 (citing *Moses v. Sterling Commerce (America), Inc.*, 122 F. App'x 177, 183–184 (6th Cir. 2005)).  However, disqualification of counsel is a "drastic measure" that "courts should be hesitant to impose except when absolutely necessary. Disqualification separates a party from the counsel of its choice with immediate and measurable effect." *Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555, 560 (Ky. 2001), as amended (Aug. 29, 2001) (citing *University of Louisville v. Shake*, 5 S.W.3d 107 (Ky. 1999)).

"A violation of the rules of professional ethics . . . does not automatically necessitate disqualification of an attorney." *El Camino Res., Ltd. v. Huntington Nat. Bank*, 623 F. Supp. 2d 863, 875–76 (W.D. Mich. 2007) (citing *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865 (S.D. Ohio 2002)).  Rather, "the extreme sanction of disqualification should only be utilized when there is a 'reasonable possibility that some specifically identifiable impropriety' actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *El Camino Res.*, 623 F. Supp. 2d at 875 (quoting *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976)); *see also Manning v. Waring, Cox, James, Sklar and Allen*, 849 F.2d 222, 224 (6th Cir. 1988)).

Whether an attorney practicing before the federal courts has violated an ethical rule is a question of federal law. *In re Snyder*, 472 U.S. 634, 645 n. 6 (1985).  Attorneys that practice in

this Court must follow the Standards of Professional Conduct as set forth in the Rules for Professional Conduct as adopted by the Kentucky Supreme Court. *See* LR 83.1, LR 83.2, LR 83.3; Ky. Sup. Ct. R. 3.130. Accordingly, this Court applies the Kentucky ethical rules when evaluating motions to disqualify counsel. *See Carlsen v. Thomas*, 159 F.R.D. 661, 663–64 (E.D. Ky. 1994); *Umphenour v. Mathias*, No. CIV.A. 07-427-KSF, 2008 WL 2785609, at *2 (E.D. Ky. July 16, 2008) ("[T]he attorneys of record in this action are subject to the Kentucky Rules of Professional Conduct and the judicial decisions interpreting those rules."); *McCauley v. Family Dollar, Inc.*, No. 3:10-CV-363-S, 2010 WL 11565164, at *1 (W.D. Ky. Nov. 1, 2010); *Allen v. Highlands Hosp. Corp.*, No. CV 04-269-GFVT, 2006 WL 8445332, at *4 (E.D. Ky. Mar. 30, 2006).

## II. DISCUSSION

CIS argues that Plaintiff's counsel engaged in improper conduct in this lawsuit and in many other similar lawsuits. CIS contends that the following conduct warrants counsel's disqualification in this case: (A) Josephson Dunlap engaged in online advertising on LinkedIn.com that utilized content that impermissibly created the impression that potential clients would achieve certain results in violation of Kentucky Rule of Professional Conduct 7.10 and engaged in online advertising that was not approved by the Texas State Bar Advertising Review Committee; (B) Plaintiff's counsel engaged in several forms of prohibited direct telephone and email solicitation in violation of Kentucky Rule of Professional Conduct 4.5, including utilizing a third-party marketing firm informing current and former inspectors of Quality Integrated Services, Inc. ("QIS") that those inspectors are eligible to join a settlement in the matter of *Wolford v. Quality Integrated Servs., Inc.*, No. 2:19CV-00109-LPL (W.D. Pa. Feb. 1, 2019); (C) Plaintiff's counsel circumvented court controls in the *Wolford* case and misrepresented the February 2020 agreement with QIS to this Court; (D) Plaintiff's counsel induced individuals to sign consent forms that

authorize the firms to bring claims against both the inspection company for whom they worked and the customer to which the employee was assigned and that contract away all of the client's rights to make decisions with respect to their claims, including settlement, in violation of the Kentucky Rules of Professional Conduct 1.2 and 1.4; (E) Josephson Dunlap initiated an advertisement campaign directed at inspectors of Frontier Integrity Solutions, LLC ("Frontier") in which the email "gives the impression that Josephson Dunlap may be writing on behalf of Frontier" in violation of Kentucky Rule of Professional Conduct 7.1 and 4.5(2)(b); (F) Plaintiff's counsel filed altered opt-in forms; and (G) Plaintiff's counsel induced one inspector, Michael Becker, to submit an untruthful declaration in in *Becker v. Delek US Energy, Inc.*, No. 3:20CV-000285 (M.D. Tenn. Apr. 1, 2020).

The Court notes that the motion to disqualify counsel does not assert any specifically identifiable impropriety that occurred in the present case. Instead, CIS focuses on actions allegedly performed by Plaintiff's counsel in other FLSA actions, with non-parties to this litigation, and with the Texas State Bar Advertising Review Committee. Nevertheless, the Court will examine the alleged conduct cited by CIS to determine whether disqualification of opposing counsel is warranted.

**A. Advertising**

CIS argues that disqualification of Plaintiff's counsel in the present case is warranted because Josephson Dunlap engaged in online advertising on LinkedIn—day-rate advertisements, website advertisements, and Offer of Judgment advertisements—that was not approved by the Texas State Bar Advertising Review Committee. CIS contends that Plaintiff's counsel utilized content in the advertisement that impermissibly created the impression that potential clients would achieve certain results in violation of Kentucky Rule of Professional Conduct 7.10. According to

4

CIS, the advertisements were initially targeted at Shawcor and later at other inspection companies and inspection company's clients.

The Kentucky Rules of Professional Conduct do not require advertisements to be submitted for approval. Ky. SCR 3.130(7.20). Instead, Kentucky Rule of Professional Conduct 7.10 provides: "A lawyer shall not make a false, deceptive or misleading communication about the lawyer or the lawyer's service. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading." Ky. SCR 3.130(7.10).

A review of the record reflects that each advertisement about which CIS complains has been reviewed and approved by the Texas State Bar Advertising Review Committee. [DN 55-2 at 18, 40–66; 71–103; 124–164]. In fact, all the advertisements specifically related to CIS were approved without suggested revisions by the Texas State Bar Advertising Review Committee. [DN 55-1, Ex. 5 at 77–102]. With respect to the allegations that some of the initial advertisements proposed by Plaintiff's counsel were misleading, the potential problems with those advertisements were remedied by the Texas State Bar Advertising Review Committee, were revised by Plaintiff's counsel, and did not result in any discipline or sanctions. Furthermore, both the Shawcor advertisement and the "Offer of Judgment" advertisement have no relationship to this case—Shawcor is not a party to this litigation or affiliated with CIS. Accordingly, disqualification of Plaintiff's counsel on these grounds is not appropriate.

**B. QIS Litigation**

CIS argues that disqualification of Plaintiff's counsel is necessary because counsel engaged in several forms of prohibited direct telephone and email solicitation in violation of Kentucky Rule of Professional Conduct 4.5, including utilizing a third-party marketing firm to inform current and

5

former inspectors of QIS that those inspectors are eligible to join a settlement in the matter of *Wolford v. Quality Integrated Servs., Inc.*, No. 2:19CV-00109-LPL (W.D. Pa. Feb. 1, 2019). According to CIS, the parties in *Wolford* notified the district court that a settlement had been reached in that case. CIS argues that in utilizing the potential settlement as pretext, Josephson Dunlap contacted former QIS inspectors, including Chris Parker, Joel Vestal, and Harold Dutro, via direct telephone solicitations and email solicitations to bring claims against QIS and any other inspection company for whom the inspectors worked. [DN 51 at 12–13]. CIS complains that the calls to Parker, Vestal, and Dutro crossed ethical boundaries because counsel requested information regarding other previous employers, suggested the individuals were entitled to recovery, repeatedly sent multiple communications even after counsel was told to stop, and in the case of Parker, the caller identified herself as a representative of CIS. [*Id*. at 13–21].

> Kentucky Rule of Professional Conduct 4.5 provides in relevant part:
>
> (2) No lawyer shall solicit professional employment by written, recorded, or electronic communication or by in-person, live telephone, or real-time electronic contact even when not otherwise prohibited by paragraph (1) if:
> (a) the target of the solicitation has made known to the lawyer a desire not to be solicited by the lawyer; or
> (b) the solicitation involves coercion, duress or harassment.

Ky. SCR 3.130(4.5).

The record reflects that the QIS settlement involves the settlement of claims against QIS pending in two FLSA actions. *See Wolford v. Quality Integrity Services, Inc.,* No. 2:19CV-00109 (W.D. Pa. Feb. 1, 2019); *Maness v. Quality Integrity Services, Inc.*, No. 3:20CV-00179 (S.D. Tex. May 28, 2020). In response to the motion to disqualify, Plaintiff's counsel represents that pursuant to the settlement, QIS provided Plaintiff's counsel a list of potential settlement class members and agreed that the list of inspectors could be contacted through reasonably available means, including phone calls. [DN 55 at 15–16]. Josephson Dunlap hired a third-party company called Alert

6

Communications to contact the inspectors. [Josephson Decl. ¶¶ 26-30]. The record further indicates that Parker, Vestal, and Dutro signed consent forms regarding the settlement with QIS and were clients of Plaintiff's counsel. [DN 55-1, Exs. 10, 11, 13]. Apart from speculation, CIS does not provide any evidence to dispute the validity of the consent forms in its reply.

Contrary to the argument by CIS, while courts *can* place limitations on counsel's contact with potential plaintiffs, the FLSA does not require judicial approval for parties or counsel to contact and locate similarly situated persons. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–72 (1989); *Frye v. Baptist Mem'l Hosp., Inc.*, No. 07-2708 MA/P, 2008 WL 2117264, at *4 (W.D. Tenn. May 20, 2008). CIS does not offer evidence that the district courts in question placed such limitation on counsel. Even if Plaintiff's counsel had improperly contacted Parker, Vestal, and Dutro as part of the QIS settlements, the proper entity to raise the alleged impropriety would be QIS in the Western District of Pennsylvania or the Southern District of Texas. *See, e.g., Carollo v. United Capital Corp.*, No. 6:16-CV-00013, 2018 WL 1508562, at *3 (N.D.N.Y. Mar. 27, 2018).

Furthermore, as to the assertion by CIS that Josephson Dunlap's communications to Parker, Vestal, and Dutro were overreaching and harassing, the time frame of the communications—primarily March and April—coupled with the signed consent forms in March of 2020 refute this claim. Interestingly, despite arguing in the motion to disqualify that Plaintiff's counsel continued to harass Parker, Vestal, and Dutro, CIS in its reply argues that Plaintiff's counsel never filed the opt-in forms by these inspectors in the QIS lawsuit thereby kicking "their own 'clients' to the curb in breach of their fiduciary duty." [DN 56 at 10]. CIS's own evidence reflects that Parker, Vestal, and Dutro rescinded their consent forms and relatedly any potential recovery.

Accordingly, disqualification of a plaintiff's counsel of choice based upon improper

7

solicitation of Parker, Vestal, and Dutro is unwarranted.

### C. Circumvention of Court Controls in *Wolford*

CIS argues that disqualification of Plaintiff's counsel is merited because counsel circumvented court controls in the *Wolford* case and misrepresented the February 2020 agreement with QIS to this Court. Specifically, CIS claims that Plaintiff's counsel never sought approval of a settlement on a collective basis nor have they sought court-approved notice of that settlement. As such, CIS complains that the district court in *Wolford* failed to police the notice process by determining the appropriate methods of distribution, by limiting communication of Plaintiff's counsel of the settlement, and by requiring notice that opt-in plaintiffs may retain their own counsel. [DN 51 at 23].

Contrary to CIS's argument, the record reflects that the parties to the QIS litigation sought approval of the settlement in both the Wolford-QIS matter and the Maness-QIS matter. *See Wolford v. Quality Integrity Services, Inc.,* No. 2:19CV-00109 (W.D. Pa. Feb. 1, 2019) (Wolford plus 22 opt-in plaintiffs) (DN 59, DN 72, DN 76); *Maness v. Quality Integrity Services, Inc.*, No. 3:20CV-00179 (S.D. Tex. May 28, 2020) (DN 25, Minute Entry Order 8/26/2020). With respect to CIS's claim that Plaintiff's counsel misrepresented the February 2020 agreement with QIS to the Court, CIS offers no evidence to support its assertion. As such, disqualification of counsel based on the conduct of Plaintiff's counsel in the QIS litigation is not supported.

### D. Consent Forms

CIS argues that disqualification of Plaintiff's counsel is required because counsel induced individuals such as Parker, Vestal, and Dutro to sign consent forms (1) that authorized the firms to bring claims against both the inspection company for whom they worked and the customer to which the employee was assigned and (2) that gave the firm authority to settle claims without

8

further consultation with the employees in violation of the Kentucky Rules of Professional Conduct in violation of Kentucky Rule of Professional Conduct 1.2 and 1.4.[1] [DN 51 at 22]. The Settlement Consent Forms provide in part:

> I retain the law firms and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

[DN 55, Exs. 10, 11, 13].

Kentucky Rule of Professional Conduct 1.2 requires a lawyer to abide by a client's decision whether to settle a matter. Nothing in the record reflects that Plaintiff's counsel violated that rule. Furthermore, language similar to the language in the QIS settlement consent form has been used in consent forms in FLSA cases and approved by courts. *See*, *e.g.*, *Abdulina v. Eberl's Temp. Services, Inc.*, 14-CV-00314-RM-NYW, 2015 WL 4624251, at *4, *6 (D. Colo. Aug. 4, 2015). Thus, disqualification of Plaintiff's counsel based on the language of the consent forms utilized by Plaintiff's counsel is not justified.

### E. Frontier Integrity Solutions

CIS contends that disqualification of counsel is appropriate because Josephson Dunlap

---

[1] Kentucky Rule of Professional Conduct 1.2 provides in relevant part:

> (a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. . . .

Ky. SCR 3.130(1.2). Relatedly, Kentucky Rule of Professional Conduct 1.4 provides in part:

> (a) A lawyer shall:
> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules . . . .

Ky. SCR 3.130(1.4).

initiated an advertisement campaign directed at inspectors of another inspection company, Frontier, in which the email "gives the impression that Josephson Dunlap may be writing on behalf of Frontier" in violation of Kentucky Rule of Professional Conduct 7.1.[2] [DN 51 at 25]. CIS also argues that because Plaintiff's counsel continued to send the email every week to those who did not sign the engagement letters, these emails also violate Kentucky Rule of Professional Conduct 4.5(2)(b).[3] In support of this allegation, CIS cites an email by Josephson Dunlap to an individual named Michael Mantz. [DN 51 at 25].

The record reflects that Michael Mantz was a client of Plaintiff's counsel. [DN 55 at 38; Josephson Decl. ¶ 40]. Rule 4.5(1)(b) permits such contact where the individual has a "prior attorney-client relationship with the lawyer." Ky. SCR 3.130(4.5)(1)(b). CIS does not submit evidence to the contrary in its reply. Additionally, the email clearly indicates that it was sent by Josephson Dunlap as the sender and states that "Josephson Dunlap has requested that this reminder be sent. This reminder will be re-sent every week until completed. **Click here** if you wish to stop receiving reminders about this agreement." [DN 51 at 25, DN 51-7]. Based on these facts, there is no indication that the Plaintiff's counsel's contact with Mantz was inappropriate. This argument does not support disqualification of Plaintiff's counsel in the present case.

## F. Altered Opt-in Forms

CIS maintains that disqualification of Plaintiff's counsel is warranted because counsel filed altered opt-in forms removing the staffing company in other FLSA cases. [DN 51-9]. In response,

---

[2] Kentucky Rule of Professional Conduct 7.10 provides: "A lawyer shall not make a false, deceptive or misleading communication about the lawyer or the lawyer's service. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading." Ky. SCR 3.130(7.10).

[3] Kentucky Rule of Professional Conduct 4.5(2)(b) provides: (2) No lawyer shall solicit professional employment by written, recorded, or electronic communication or by in-person, live telephone, or real-time electronic contact even when not otherwise prohibited by paragraph (1) if: . . . (b) the solicitation involves coercion, duress or harassment. Ky. SCR 3.130(4.5).

Plaintiff's counsel represents that in some instances, clients will submit to them a single written consent to pursue claims against multiple companies. Before filing such consent forms, counsel have redacted the identities of companies other than the defendant sued by plaintiffs in that particular case. [DN 55 at 41]. Contrary to CIS's argument, a review of these redacted opt-in forms tendered by CIS does not suggest that those inspectors worked solely for the customer of the staffing company. The forms merely convey that the inspector agreed to make a claim against the named company and retained Plaintiff's counsel to do so. Disqualification is not supported by this argument.

### G. Michael Becker Affidavit

CIS argues that disqualification of Plaintiff's counsel is warranted because counsel induced one inspector, Michael Becker, to submit an untruthful declaration in *Becker v. Delek US Energy, Inc.*, No. 3:20CV-000285 (M.D. Tenn. Apr. 1, 2020). [DN 51-10]. Specifically, in *Becker*, Michael Becker avers that he "worked exclusively for Delek US Energy, Inc. as an electrical inspector." [*Id.*].

A review of *Becker* reflects that the parties and the district court are aware that plaintiff was assigned to work for Delek US Energy, Inc., by the inspection company, TIR. Notwithstanding, if Becker actually perjured himself, such an allegation should be presented to the District Judge presiding over the *Becker v. Delek U.S. Energy* litigation. Counsel for *Delek* is capable of making such argument; however, no motion for contempt or disqualification was filed in *Becker* as a result of Becker's affidavit. As such, the Court finds that this argument does not support disqualification of Plaintiff's counsel.

### III. CONCLUSION

The Court does not find the motion to disqualify Plaintiff's counsel well-taken. Bottom

line, CIS has not alleged any impropriety by counsel in the case at bar. The ethical violations alleged by CIS involving advertisements, solicitations, and communications connected to unrelated parties and cases are best addressed by the disciplinary body or the courts in the relevant jurisdiction. "[D]isqualification is a drastic measure which courts should be hesitant to impose except when absolutely necessary." *Gainey Corp. v. Liberty Mut. Fire Ins. Co.*, No. CV 08-258-ART, 2009 WL 10676033, at *3 (E.D. Ky. Dec. 8, 2009) (internal citation omitted). On the facts of this case, this drastic measure is not warranted, nor are any of CIS's alternative sanctions appropriate.

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Intervenor-Defendant, Cleveland Integrity Services, Inc., to disqualify the law firms of Josephson Dunlap LLC and Bruckner Burch PLLC as counsel in this matter, or in the alternative, to preclude counsel from unapproved communications with putative members of the collective class and/or from earning fees from any collective that may be established [DN 51] is **DENIED**.

cc: counsel of record

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

November 23, 2020