UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:20CV-00030-JHM

JASON ALTENHOFEN, individually and
on behalf of others similarly situated                                          PLAINTIFF

V.

SOUTHERN STAR CENTRAL GAS PIPELINE, INC.                          DEFENDANT

V.

CLEVELAND INTEGRITY SERVICES, INC.                    INTERVENOR-DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions by Defendant, Southern Star Central Gas Pipeline, Inc., and Intervenor-Defendant, Cleveland Integrity Services, Inc., to compel arbitration pursuant to the Federal Arbitration Act and to dismiss this action.  [DN 13, DN 37].  Fully briefed, these motions are ripe for decision.

## I.  BACKGROUND

Plaintiff, Jason Altenhofen, brings this case under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., asserting that Defendant, Southern Star Central Gas Pipeline, Inc. ("Southern Star"), failed to pay him overtime.  Altenhofen alleges that he was employed by Southern Star as an inspector and that he worked in excess of 40 hours each week, but was not paid overtime as required by the FLSA.  [DN 1].

Southern Star denies that it had an employment relationship with Altenhofen insisting that he was employed by and paid by Intervenor-Defendant, Cleveland Integrity Services, Inc. ("CIS"), which assigned him to work for CIS's customer, Southern Star.  CIS employs inspection personnel to provide third-party inspection services to its customers.  [DN 22-1, Frye Decl. at ¶ 3].  Southern

Star is one of CIS's customers.  [*Id*. at ¶ 4].  Southern Star hired CIS to provide third-party inspection services for its Welda Station project in Welda, Kansas.  [*Id*. at ¶¶ 4, 10].  Southern Star pays CIS a stipulated rate to compensate for the services CIS provides.  CIS then pays its inspectors in a manner that it determines.  [*Id*. at ¶ 6].

CIS represents that it employed Altenhofen and assigned him to provide inspection services to various CIS clients.  According to CIS, it assigned Altenhofen as a Chief Inspector to its team providing services to Southern Star at the Welda Station in Kansas.  [*Id* at ¶¶ 8–10].  CIS determined that Altenhofen's pay and duties qualified him as overtime exempt under the FLSA and instead paid him "a guaranteed minimum weekly salary equal to four times the daily salary amount" based on FLSA regulations, 29 C.F.R. § 541.604(b).  [*Id*. at ¶¶ 12, 17].  While employed at CIS, Altenhofen signed ten separate documents that identified him as an employee of CIS.  [*Id*. at Frye Decl., Ex. A-B, E-K, M].  Altenhofen also signed an arbitration agreement as a condition of his employment agreeing to "arbitrate all claims that have arisen or will arise out of [his] employment with or termination from the Company regardless of whether those are claims under common law or under statutory law. . . ."  [*Id*. at Frye Decl., Ex. A ¶ 2].  The agreement also provides that "[a]rbitration shall be conducted in accordance with the American Arbitration Association Employment Arbitration Rules ('AAA Rules')."  [*Id.*].  Between July 5, 2018, to October 20, 2018, while Altenhofen was assigned to the Southern Star Kansas project, CIS paid Altenhofen $ 22,100.00.  Altenhofen earned an additional $ 39,159.82 from CIS in 2018 for work done while assigned to a different CIS customer.  [*Id*. at ¶ 16].

On April 20, 2020, CIS filed a motion to intervene pursuant to Federal Rule of Civil Procedure 24 claiming that it was Altenhofen's employer during the time period.  On June 30, 2020, the Court granted CIS's motion to intervene.  [DN 36].  Both Southern Star and CIS have

now moved to compel Altenhofen to arbitrate all claims arising out of his employment.  [DN 13, DN 37].

## II.  STANDARD OF REVIEW

In evaluating a motion to compel arbitration, courts apply the summary judgment standard in Fed. R. Civ. P. 56(c).  *See McCoy v. Cambridge Franchise Holdings, LLC*, No. 3:18-CV-00856-GNS, 2019 WL 4280597, at *1 (W.D. Ky. Sept. 10, 2019); *Weddle Enters., Inc. v. Treviicos-Soletanche, J.V.*, No. 1:14CV-00061-JHM, 2014 WL 5242904, at *2 (W.D. Ky. Oct. 15, 2014) ("A motion to dismiss based on the existence of a valid arbitration agreement is not evaluated under the usual Fed. R. Civ. P. 12(b)(6) standard.  Instead, courts apply the standard applicable to motions for summary judgment." (citations omitted)).  "In order to show that the validity of the agreement is in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate," a showing that mirrors the summary judgment standard.  *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks omitted).

## III.  DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "'manifests a liberal federal policy favoring arbitration agreements.'"  *Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1061 (E.D. Ky. 2015) (quoting *Masco Corp. v. Zurich American Ins. Co.*, 382 F.3d 624, 626 (6th Cir. 2004)).  "Section 2 of the FAA states that arbitration clauses in commercial contracts 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Id.* (quoting 9 U.S.C. § 2).  "Under § 4, when a party is 'aggrieved by the failure of another party to arbitrate under a written agreement for arbitration,' that party 'may petition a federal court for an order directing that such arbitration proceed in the manner provided for' by

the contract." *Id.* (quoting *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) (quoting 9 U.S.C. § 4) (internal quotation marks omitted)).  The FAA "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Rent–A–Center*, 561 U.S. at 67 (internal citation omitted).

Parties may agree to arbitrate disputes over gateway issues such as the validity or enforceability of an arbitration provision.  *Rent-A-Center*, 561 U.S. at 68-69.  This type of provision is known as a delegation provision.  "The court regards the Delegation Provision as a 'clear and unmistakable' delegation of those threshold issues, which include the plaintiffs' enforceability challenges, to the arbitrator." *Wynn v. Five Star Quality Care Trust*, No. 3:13-CV-01338, 2014 WL 2560603, *7 (M.D. Tenn. June 5, 2014) (citing *Crossville Medical Oncology, P.C. v. Glenwood Systems, LLC*, 485 F. App'x 821, 823 (6th Cir. 2012).  "The Supreme Court has expressly found that delegation clauses must be enforced, absent a valid challenge specific to the delegation clause—as opposed to a challenge to the enforceability of the Agreement as a whole." *Wynn*, 2014 WL 2560603, *7 (citing *Rent-A-Center*, 561 U.S. at 70, 72).  As noted by the Supreme Court in *Henry Schein, Inc. v. Archer and White Sales, Inc.*, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).  "However, if the party opposing arbitration challenges the validity or enforceability of the delegation provision *per se*, then the court, rather than the arbitrator, must address those challenges." *Becker v. Delek US Energy, Inc.*, No. 3:20-CV-00285, 2020 WL 5983115, at *3 (M.D. Tenn. Oct. 8, 2020) (citing *Rent-A-Ctr.*, 561 U.S. at 71).

In the present case, the arbitration agreement between Altenhofen and CIS provided that "[t]he Employee and the Company agree to arbitrate all claims that have arisen or will arise out of

4

Employee's employment with or termination from the Company regardless of whether those are claims under common law or under statutory law." [DN 13-1 at Frye Decl., Ex. A ¶ 2]. Altenhofen does not dispute that CIS is a signatory to the arbitration agreement and that he is compelled to arbitrate with CIS. However, Altenhofen maintains that he cannot be compelled to arbitrate with an entity—Southern Star—that was not a party to the arbitration agreement. Thus, the overall issue raised here is whether Altenhofen, a signatory, can be compelled to arbitrate his FLSA claim against Southern Star, a non-signatory. Before examining the overall issue, the Court must first determine whether the Court or the arbitrator should decide whether Altenhofen must arbitrate his FLSA claim against Southern Star.

## A. Delegation Provision

Defendants argue that the question of whether Altenhofen's claim against Southern Star is subject to arbitration must be decided by the arbitrator. Defendants contend that there is no question that Altenhofen's arbitration agreement is valid: i.e., he does not dispute that he actually entered into the arbitration agreement. Likewise, Defendants point out that Altenhofen does not dispute that his arbitration agreement incorporates the AAA Rules, which delegate to the arbitrator any questions of arbitrability under the agreement. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020). Defendants further argue that this principle applies even where, as here, a non-signatory seeks to enforce the agreement. *See*, *e.g.*, *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (affirming district court order compelling arbitration; where arbitration agreement incorporates AAA rules, it is for the arbitrator to determine if claims against non-signatory are arbitrable); *Turner v. PillPack, Inc.*, No. 5:18-CV-66-TBR, 2019 WL 2314673, at *6 (W.D. Ky. May 30, 2019) (same). According to

Defendants, the United States Supreme Court's recent decision in *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524 (2019), mandates referral of the dispute to the arbitrator.

> To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. See 9 U.S.C. § 2. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.

*Henry Schein*, 139 S. Ct. at 530.  Consequently, according to Defendants, because there is a valid arbitration agreement which delegates issues of arbitrability, *Schein* controls and instructs that the arbitrator, not the Court, must decide the dispute.

While many courts[1], including district court's within this circuit, presented with this issue have determined such inquiry to be a question of enforceability of the delegation clause and accordingly a question for the arbitrator, recent Sixth Circuit case law suggests otherwise.

In *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842 (6th Cir. 2020), the plaintiff who worked for a Domino's franchise for four years began working for a second Domino's franchise.  At the time of his employment with the second franchise, the plaintiff signed an arbitration agreement with that franchise that required him to arbitrate various issues related to his employment.  *Blanton*, 962 F.3d at 844.  The first franchise terminated Plaintiff once it learned of his employment with the second franchise citing the Domino's franchise agreement.  The plaintiff filed an action against Domino's alleging that the franchise agreement violated federal antitrust

---

[1] *Robertson v. Enbridge (U.S.), Inc.*, No. CV 19-1080, 2020 WL 5751641, at *4 (W.D. Pa. July 31, 2020), report and recommendation adopted, No. 2:19-CV-1080, 2020 WL 5702419 (W.D. Pa. Sept. 24, 2020) (citing *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017) (language of arbitration agreement clearly and unmistakably delegates arbitrability even with regard to two non-signatory defendants against signatory plaintiff); *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205 (2d Cir. 2005); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469 (1st Cir. 1989); *Neal v. GMRI, Inc.*, No. 1:19-CV-647, 2020 WL 698270, at *5 (M.D. Ala. Feb. 11, 2020); *Riversa v. L-3 Communications Corp.*, No. 8:09-cv-02447, 2010 WL 11629016, at *2 (M.D. Fla. May 24, 2010); *De Angelis v. Icon Entertainment Grp., Inc.*, 364 F. Supp. 3d 787, 797 (S.D. Ohio 2019); *Turner v. PillPack, Inc.*, 2019 WL 2314673, at *6 (W.D. Ky. May 30, 2019).

laws.  Domino's moved to compel arbitration under the FAA "based on the arbitration provision in the agreement between the plaintiff and the second franchise."  *Becker v. Delek US Energy, Inc.*, No. 3:20-CV-00285, 2020 WL 5983115, at *6 (M.D. Tenn. Oct. 8, 2020).  The plaintiff opposed the motion arguing that Domino's could not enforce the arbitration agreement "because the company hadn't signed the agreements (only their franchises had)."  *Blanton*, 962 F.3d at 844.  The district court granted the motion to arbitrate, and the Sixth Circuit affirmed.  "The appellate court held that the question of whether the arbitration agreement covered the plaintiff's claims against Domino's, a non-signatory, was one going to 'arbitrability' and that, by adopting the American Arbitration Association's Rules ('AAA Rules'), the parties 'clearly and unmistakably' agreed to arbitrate 'arbitrability.'"  *Becker*, 2020 WL 5983115, *6 (quoting *Blanton*, 962 F.3d at 845).

However, the Sixth Circuit in *Blanton* expressed in a footnote that its "opinion did not address the antecedent question of whether Domino's, as a non-signatory, had a specific right to enforce the delegation provision in the arbitration agreement."  *Becker*, 2020 WL 5983115, *7.  Specifically, the Sixth Circuit stated:

> On that point, we should clarify one question not before us.  The underlying dispute in this case is whether Domino's (as a non-signatory) has any right to enforce the arbitration agreement as a whole.  And both parties have litigated this case on the view that the first question we must answer is whether [the plaintiff] agreed to arbitrate that question of "arbitrability."  But there might be another, antecedent question here—namely, whether Domino's has any right to enforce the *specific* provision of the agreement in which [the plaintiff] purportedly agreed to arbitrate "arbitrability."  *Cf. Rent-A-Center*, 561 U.S. at 69–71, 130 S.Ct. 2772 (treating the broader arbitration agreement as separate from the specific agreement to arbitrate "arbitrability" and distinguishing between challenges to the former and challenges to the latter).  Because that is a distinct question that is not before us, we express no views on it.  *See United States v. Sineneng-Smith*, —— U.S. ——, 140 S. Ct. 1575, 1579, —— L.Ed.2d —— (2020) (reiterating the "principle of party presentation" under which courts "rely on the parties to frame the issues for decision" and decide only the "matters the parties present" (citation omitted)).

*Blanton*, 962 F.3d at 845 n.1.  Thus, the Sixth Circuit specifically limited *Blanton*'s application to only challenges to the enforceability of the arbitration agreement as a whole, in contrast to a challenge to the specific agreement to arbitrate "arbitrability."  *Id.* (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67, 72 (2010) ("Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.")).

Interpreting both the footnote in *Blanton* and the holding in *Rent-A-Center*, the district court in *Becker v. Delek* examined a similar arbitration agreement and a similar fact pattern and determined:

> The case now before this court involves the precise situation recognized by, but not presented in, *Rent-A-Center* or *Blanton*: the plaintiffs challenge the validity and enforceability of the delegation provision itself. In short, because the plaintiffs expressly challenge the validity of the delegation provision, the court must consider its enforceability in the specific context of the facts presented here.

*Becker*, 2020 WL 5983115, at *7 (M.D. Tenn. Oct. 8, 2020).  As such, the district court determined that it would determine the "arbitrability" issue, not the arbitrator.  This Court adopts the reasoning set forth in *Becker*.  Because Altenhofen expressly challenges the validity of the delegation provision, whether Altenhofen's claims against Southern Star are covered by the arbitration agreement is a question for the Court.

Finally, Defendants' reliance on *Schein* does not alter this conclusion.  The decision in *Schein* merely assumed the existence of a written agreement to arbitrate a given dispute in that case and "rejected the 'wholly groundless' exception to arbitrability delegations."  *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.,* 921 F.3d 508, 515 n. 4 (5th Cir. 2019).

**B.  Enforcement of the Delegation Provision**

The liberal federal policy favoring arbitration agreement "is not so broad that it compels

the arbitration of issues not within the scope of the parties' arbitration agreement." *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008). "'Before compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.'" *Id.* (quoting *Bratt Enterprises, Inc. v. Noble International Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003)). "'Because arbitration agreements are fundamentally contracts,' the Court must 'review the enforceability of an arbitration agreement according to the applicable state law of contract formation.'" *GGNSC Louisville Camelot, LLC v. Coppedge*, No. 3:16-CV-00834-TBR, 2017 WL 3430579, at *4 (W.D. Ky. Aug. 9, 2017) (quoting *Seawright v. American Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)); *see also North Fork Collieries LLC v. Hall*, 322 S.W.3d 98, 102 (Ky. 2010).

Basic contract law instructs that "[a]bsent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002) (citations omitted); *see also Thoroughbred Assocs., L.L.C. v. Kansas City Royalty Co.*, 308 P.3d 1238, 1247 (Kan. 2013) ("A contract must be construed within its four corners and all provisions considered together, not in isolation."); *Scungio v. Scungio*, 291 P.3d 616, 622 (Okla. 2012) ("A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful. . . . That intent is to be ascertained from the four corners of the contract.") (internal citation omitted).

Here, the parties agree that a valid agreement to arbitrate exists between Altenhofen and CIS, but they disagree as to whether the claims arising from Altenhofen's FLSA cause of action against Southern Star are within the scope of the agreement.  Specifically, Altenhofen maintains

that he cannot be compelled to arbitrate with an entity—Southern Star—that was not a party to the arbitration agreement.  He contends that he and CIS agreed to arbitrate only with each other those claims arising between them concerning Altenhofen's employment or termination with CIS. Accordingly, Altenhofen argues that he did not agree to arbitrate this matter; and, as a result, the agreement is not enforceable as to the FLSA claims because these claims fall outside the agreement's scope.

The arbitration agreement states, in pertinent part:

Both Cleveland Integrity Services, Inc. ("Company") and you ("Employee") agree to the terms and conditions of this Mutual Arbitration Agreement ("Agreement") as an efficient, impartial and cost-effective dispute resolution procedure.

**1.      Mutual Agreement**
This Agreement covers all claims by the Employee against the Company or by Company against the Employee.  All references to "Employee" include his or her estate or other representatives; all references to "Company" include its affiliates or agents.
. . .
**2.      Claims Covered**
The Employee and the Company agree to arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company regardless of whether those are claims under common law or under statutory law. The only exceptions are (a) claims for which arbitration is unavailable as a matter of law, such as workers' compensation benefits, unemployment compensation benefits, or charges under the National Labor Relations Act; (b) claims under an ERISA plan that contains its own internal appeal process; and (c) claims for injunctive relief pending the outcome of arbitration by either the Employee or the Company.
. . .
[Mutual Arbitration Agreement, DN 13-1].

The Sixth Circuit has previously stated that where an arbitration clause is broadly written, "'only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators.'" *Watson Wyatt*, 513 F.3d at 650–51 (quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003) (quoting *AT & T Tech.,*

*Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986))).  Given the directives of the Supreme Court and the Sixth Circuit, the Court is "required to give a general presumption of arbitrability and to resolve any doubts in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"  *Watson Wyatt*, 513 F.3d at 650 (quoting *Masco*, 382 F.3d at 627).

Examining the four corners of the agreement, the Court finds that Altenhofen's FLSA claims against Southern Star are claims arising out of his employment with CIS and, as a result, are encompassed by the Mutual Arbitration Agreement.  The language in paragraph 1 specifies that any claims the Altenhofen and CIS have against each other will proceed to arbitration.  The language contained in paragraph two is much broader—it is not limited to claims Altenhofen and CIS "have against each other but covers all the claims the parties have arising from [Altenhofen's] employment."  *Snow v. Silver Creek Midstream Holdings, LLC*, No. 19-CV-00241-ABJ, 2020 WL 5551018, at *6 (D. Wyo. Apr. 14, 2020).  Interpreting the arbitration agreement as a whole, arbitration is mandated as to any claims the parties had against each other under paragraph one and any claims arising out of Altenhofen's employment with CIS under paragraph two.  To read the contract any differently as Altenhofen suggests would render paragraph two meaningless.  "A contract is to be construed as a whole, giving effect to each of its parts, and not construed so as to make a provision meaningless, superfluous or of no effect."  *McGinnity v. Kirk*, 362 P.3d 186, 199 (Okla. 2015); *see also Hoffman v. City of Topeka*, 425 P.3d 644 (Kan. Ct. App. 2018); *Price v. Toyota Motor Mfg. Kentucky*, No. 2017-CA-000560-WC, 2017 WL 3498777, at *3 (Ky. Ct. App. July 28, 2017).  Altenhofen's FLSA claims against Southern Star arise out of his employment with CIS; therefore, the Court determines that Altenhofen's claims fall within the scope of the Mutual Arbitration Agreement.

This finding is supported by the district court in *Snow v. Silver Creek Midstream Holdings, LLC*, No. 19-CV-00241-ABJ, 2020 WL 5551018, at *5–8 (D. Wyo. Apr. 14, 2020).  In *Snow*, an inspection company hired a pipeline inspector, classified him as overtime exempt, and eventually assigned him to a project run by a client of the inspection company.  The pipeline inspector sued the inspection company's customer for overtime under the FLSA, but did not sue the inspection company in an effort to avoid the arbitration agreement that was a part of his employment agreement.  In determining whether the pipeline inspector's FLSA claim against the customer was subject to arbitration under the arbitration agreement between the pipeline inspector and the inspection company, the district court interpreted the exact same relevant language as the arbitration agreement in this case in defining "Mutual Agreement" and the "Claims Covered."  The court held:

> Interpreting this agreement as a whole, there is a separate section (paragraph two) specifying which claims are covered.  It provides more detail to paragraph one.  If paragraph two only included claims Mr. Snow and Applied had against each other, it would be superfluous to paragraph one and mean nothing.  Paragraph one specifies that any claims the parties have against each other will go to arbitration.  Paragraph two says that any claims the parties have regarding Mr. Snow's employment will proceed to arbitration.  These provisions read consistently.  It is clear the intent was to cover any claims the parties had against each other and claims they had regarding Mr. Snow's employment.  Mr. Snow's claim against Silver Creek falls within the scope of the arbitration agreement.

*Snow*, 2020 WL 5551018, *8.

Contrary to Altenhofen's argument, *Bock v. Salt Creek Midstream LLC*, No. 19-1163 WJ/GJF, 2020 WL 3989646 (D. N.M. July 15, 2020), does not mandate a different result.  Unlike the arbitration agreement in *Snow*, the arbitration agreement in *Bock* expressly limited the scope of the arbitration agreement to only covered claims against certain entities.  *Id.* at *10.  Specifically, the arbitration agreement in *Bock* provided for arbitration of "claims or controversies, including but not limited to, claims arising out of or related to my . . . employment . . . that the Company

12

may have against me or I may have against: (1) the Company or its subsidiaries or affiliated entities ("Kestrel Entities"): (ii) Kestrel Entities officers, directors, employees, or agents in their capacity as such or otherwise: (iii) Kestrel Entities' benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (iv) all of their successors and assigns." *Id*. at *10. In contrast to the arbitration agreement in *Snow*, no other section of the agreement in *Bock* addressed what must be arbitrated.

Essentially, the arbitration agreement in *Snow* is much broader than the agreement in *Bock*. In fact, the district court in *Bock* acknowledged the difference and adopted the holding in *Snow* in addressing a separate section of its arbitration agreement providing for a collective action waiver. *Id*. at *14–15. There, the waiver provided: "The Company and I waive any right for any dispute to be brought, heard, decided, or arbitrated as a class and/or collective action" without limiting the scope of the agreement by further demarking that only claims against certain entities were covered. *Id*. In interpreting that language, the district court in *Bock* specifically adopted *Snow*: "As with *Snow*, the reader can readily determine that Section 3's class action waiver covers *all* claims, whether brought against Kestrel, the other enumerated targets of section 1, or Defendant." *Id*. at 16.

Furthermore, the other factually similar cases relied upon by Altenhofen contain narrower arbitration clauses than the present case or *Snow*. *See Becker v. Delek US Energy, Inc.*, No. 3:20-CV-00285, 2020 WL 5983115, at *6 (M.D. Tenn. Oct. 8, 2020) ("The parties agree that any dispute, controversy or claim arising out of or related to in any way to the *parties'* employment relationship or termination of that relationship, including this Employment Agreement or any breach of this agreement, shall be submitted to and decided by binding arbitration. . . ."); *Ferrell v. SemGroup Corp.*, No. 19-CV-00610-GKF-JFJ, 2020 WL 5492989, at *1 (N.D. Okla. Sept. 9,

2020) (same); *Robertson v. Rep Processing, LLC*, No. 19-CV-02910-PAB-NYW, 2020 WL 5702296, at *1 (D. Colo. Sept. 24, 2020) (same as *Bock*).[2]

For these reasons, the Court finds that the arbitration agreement is broad enough to cover Altenhofen's claim against Southern Star as a matter of contract law.  *See Snow*, 2020 WL 5551018, *5.

## C. Dismiss or Stay Proceedings

Southern Star asks the Court to dismiss the case, rather than stay proceedings, in the event that the arbitration agreement is enforced.  "The FAA requires a court to stay proceedings pending arbitration 'only on application of one of the parties.'" *Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519 (6th Cir. 2017) (citing 9 U.S.C. § 3).  None of the parties have requested a stay, making dismissal appropriate.  *Id*.  Therefore, Defendants' motion to compel arbitration is granted, and Altenhofen's claims will be dismissed without prejudice.  *Hilton*, 687 F. App'x at 519 (dismissal without prejudice is appropriate to allow parties to refile or reopen case for entry of arbitration award or any other relief to which parties may be entitled).  *See also Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x. 972, 975 (6th Cir. 2009); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

---

[2] The district court in *Robertson v. Rep Processing, LLC*, also acknowledges the broad language of *Snow*:

> On April 15, 2020, Kestrel submitted a notice of supplemental authority [Docket No. 48] in which a District of Wyoming court granted a motion to compel arbitration in what Kestrel classifies as a "nearly identical" factual scenario. Docket No. 48 at 3 (citing *Snow v. Silver Creek Midstream Holdings, LLC*, District of Wyoming Case No. 19-cv-00241). Notwithstanding the fact that Kestrel is no longer a party and the Court need not consider its filings, the Court finds that the case cited by Kestrel is distinguishable. In *Snow*, the arbitration clause at issue contained a provision stating that "[t]he Employee and the Company agree to arbitrate all claims that have arisen or will arise out of Employee's employment or termination from the Company." *See Snow*, Docket No. 41 at 6. No such broad language can be found in the arbitration clause here.

*Robertson v. Rep Processing, LLC*, 2020 WL 5702296, at *4 (D. Colo. Sept. 24, 2020).

### IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1.  Defendants' motions to compel arbitration and to dismiss this action [DN 13, DN 37] are **GRANTED**.

2. The case is **DISMISSED WITHOUT PREJUDICE** subject to the parties' right to move to re-open this case for entry of an arbitration award or for any other relief to which the parties may be entitled.

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: counsel of record

November 23, 2020